**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JUAN GONZALEZ HERNANDEZ,** | : | |
| **Petitioner,** | : | **CIVIL ACTION NO. 3:26-2172** |
| **v.** | : | **(JUDGE MANNION)** |
| **CRAIG LOWE,** | : | |
| **Respondent.** | : | |

# MEMORANDUM

Pending before the Court are Juan Gonzalez Hernandez's ("Petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241, (**Doc. 1**), motion for temporary restraining order, (**Doc. 10**), and motion requesting the Court to conduct the bond hearing or otherwise enforce a constitutionally adequate bond hearing, (**Doc. 11**). For the reasons stated herein, the petition will be **GRANTED** insofar as it requests a bond hearing before an immigration judge; the motion for temporary restraining order will be **GRANTED** to the extent it requests that Petitioner not be transferred out of the Middle District of Pennsylvania, and otherwise **DENIED AS MOOT**; and the motion requesting the Court to conduct the bond hearing or otherwise enforce a constitutionally adequate bond hearing will be **DENIED WITHOUT PREJUDICE**.

## I. BACKGROUND

Petitioner is a citizen and native of Mexico. (Doc. 8-2 at 2). Petitioner entered the United States at an unknown location without being admitted or inspected by an immigration officer. *Id.* at 4. However, Petitioner claims that he has been living in the United States for twenty-four years. (Doc. 9 at 1).

On December 17, 2024, Petitioner was arrested and charged with violating a protective order. (Doc. 8-2 at 4). On February 15, 2025, Petitioner was arrested again for violating a protective order. *Id.*; *see also* (Doc. 8-4). In the most recent incident, Petitioner attempted to communicate with the victim, his ex-girlfriend. *Id.* at 5. The charges remain pending. (Doc. 8-2 at 4).

On February 15, 2025, ICE encountered Petitioner at the Harford County Detention Center following his arrest. (Doc. 8-2 at 3). During processing, Petitioner was charged as removable pursuant to Immigration and Nationality Act ("INA") §212(a)(6)(A)(i), and issued a Notice to Appear ("NTA") before an immigration judge. (Doc. 8-3 at 2). Petitioner has no pending hearings. *See* EIOR Automated Case Information (available at https://acis.eoir.justice.gov/en/) (enter Petitioner's A-number and country of origin) (last accessed Sept. 9, 2026).

On July 31, 2026, Petitioner filed the instant petition. (Doc. 1). On August 24, 2026, Respondent filed a response to the petition. (Doc. 8). On September 8, 2026, Petitioner filed a traverse in support of the petition. (Doc. 9). On the same day, Petitioner filed a motion for temporary restraining order seeking nearly identical relief as the underlying petition—immediate release from custody, or in the alternative, an order granting Petitioner a constitutionally adequate bond hearing. (Doc. 10). Similarly, Petitioner also filed a motion requesting the Court to conduct the bond hearing, or in the alternative, enforce a constitutionally adequate bond hearing. (Doc. 11). The matters are now ripe for disposition.

## II. LEGAL STANDARD

Under 28 U.S.C. §2241, district courts have the authority to grant writs of habeas corpus when a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(1), (3).

Furthermore, "[i]t is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody." *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972). However, "[w]ith respect to certain factual issues, the burden of proof may

be shifted to the state because of specific policy considerations or because the available evidence is likely to be in the hands of the state." *Id.*

## III. DISCUSSION

### a. Jurisdiction

The Court's authority to hear noncitizen habeas petitions under 28 U.S.C. §2241 is limited in some circumstances by 8 U.S.C. §§1252(g), (b)(9), and (a)(2)(B)(ii).

§1252(g) states that "[e]xcept as provided in this section and notwithstanding any other provisions of law . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. §1252(g). Here, the Court's jurisdiction is not barred by §1252(g) as the petition does challenge the commencement of removal proceedings, the Attorney General's decision to adjudicate, nor the execution of a removal order. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (finding that §1252(g)(2) divests the Court of jurisdiction "only to [these] three discrete actions[.]").

§1252(b)(9) states that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceedings brought to remove an alien

from the United States . . . shall be available only on judicial review of a final order [of removal]." 8 U.S.C. §1252(b)(9). Here, the Court's jurisdiction is not barred by §1252(b)(9) as the petition does not seek review of any law or fact arising from a removal proceeding. *See E.O.H.C. v. Sec'y United States Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (finding that §1252(b)(9) "does not reach claims that are independent of, or wholly collateral to, the removal process[.]").

§1252(a)(2)(B)(ii) prohibits district courts from reviewing discretionary detention choices of the Attorney General or Secretary of Homeland Security. 8 U.S.C. §1252(a)(2)(B)(ii). Here, the Court's jurisdiction is not barred by §1252(a)(2)(B)(ii) as the petition does not challenge a discretionary detention choice. *See Patel v. O'Neil*, 2025 WL 3516865, at *3 (M.D.Pa. Dec. 8, 2025) ("section 1252(a)(2)(B)(ii) is inapposite because the Respondents' 'statutory detention power is "not a matter of discretion" to which §1252(a)(2)(B)(ii) applies[.]'") (internal citations omitted).

Finally, courts considering the issue of whether a petitioner is being wrongfully detained without a bond hearing "have almost universally held that they have jurisdiction," and, therefore, that §§1252(g), (b)(9), and (a)(2)(B)(ii) do not apply. *Patel*, 2025 WL 3516865 at *3.

**b. Exhaustion of administrative remedies**

"A petitioner challenging agency action must generally first exhaust administrative remedies; however, in habeas proceedings, 'exhaustion exists as a judicially created doctrine applied at the Court's discretion.'" *Vadel v. Lowe*, 2025 WL 3772059, at *3 (M.D.Pa. Dec. 31, 2025) (quoting *Kashranov v. Jamison*, 2025 WL 3188399, at *3 (E.D.Pa. Nov. 14, 2025)). Here, further administrative review would be pointless, as Petitioner is detained under 8 U.S.C. §1225(b)(2)(A), which precludes immigration judges from holding a bond hearing. *See id.*; *see also Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) (holding that an immigration judge "has no authority to consider bond requests for any person who entered the United States without admission.").

**c. 8 U.S.C. §1226(a) applies to Petitioner**

Respondent argues that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. §1225(b)(2)(A), which does not allow for courts to hold a bond hearing. Petitioner, on the other hand, argues that his continued detention violates due process rights.

Courts nationwide, including this Court, have been dealing with the very issue presented in this case. Namely, whether a noncitizen habeas petitioner who has been residing in the United States for some time is subject to the mandatory detention provision of §1225(b)(2)(A). In *Barbosa da*

*Cunha v. Freden*, the United States Court of Appeals for the Second Circuit considered the issue and ruled that it is "clear that Section 1226(a) governs detention of noncitizens like Petitioner. Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter." 175 F.4th 61, 69 (2d Cir. 2026). In reaching this conclusion, the court noted that its "holding is consistent with the decisions of over 370 district judges across the Nation who (as of mid-February 2026) have also rejected the government's position. In other words, over ninety percent of district judges have sided with Petitioner." *Id.* at 71.

Since *Barbosa da Cunha*, several other circuit courts have joined the Second Circuit in ruling that §1226(a) applies. *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Santillan Quiroz v. Mullin*, 2026 WL 1876709 (10th Cir. 2026); *Hernandez Alvarez v. Warden, Federal Detention Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026); *cf. Castañon-Nova v. United States Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025) ("*Castañon-Nova I*") (holding that a petitioner is likely to succeed on the merits of a claim for wrongful detention under 8 U.S.C. §1225(b)(2)(A)); *see also Castañon-Nova*

*v. United States Dep't of Homeland Sec.*, 175 F.4th 828 (7th Cir. May 5, 2026) ("*Castañon-Nova II*").

Most significantly for this Court, the United States Court of Appeals for the Third Circuit recently joined the consensus interpretation. *See Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223, at *3 (3d Cir. Aug. 28, 2026) ("To fall within §1225(b)(2)(A)'s ambit, an 'applicant for admission' must engage in present or ongoing action to gain 'admission,' that is, 'lawful entry . . . into the United States after inspection and authorization by an immigration officer[.]'"). The *Buele Morocho* Court held that "[b]ecause §1225(b)(2)(A) does not apply to Petitioners as they were not detained at the border, their detentions were unlawful under that provision of the INA." *Id.* at *8. The undersigned will continue to join in this consensus interpretation in light of the Third Circuit's precedential decision.

For §1225(b)(2)(A) to apply: "(1) there must be an 'examining immigration officer' who determines; (2) that an 'applicant for admission[;]' (3) is 'seeking admission[;]' and (4) 'not clearly and beyond a doubt entitled to be admitted.'" *Bethancourt v. Soto*, 807 F.Supp.3d 397, 406 (D.N.J. Oct. 22, 2025) (citing 8 U.S.C. §1225(b)(2)(A)). "[S]eeking admission" requires "active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry." *Gonzalez Centeno v. Lowe*, 2026

WL 94642, at *3 (M.D.Pa. Jan. 13, 2026) (quoting *Quispe v. Rose*, 819 F.Supp.3d 362, 370 (M.D.Pa. 2025)); *see also Buele Morocho,* 2026 WL 2546223, at *3 ("[F]or §1225(b)(2)(A) to apply, the noncitizen must do more than be an 'applicant for admission.'"). An individual affirmatively "seeking admission" should not be confused as being the same as an "applicant for admission." *See Patel*, 2025 WL 3516865 at *5 (finding that such an interpretation of "seeking admission" violates the rule against surplusage). Therefore, because "seeking admission" applies to individuals in an affirmative act, §1225(b)(2)(A) does not apply to "noncitizens . . . who have resided in the United States for years." *Id.*; *see also Buele Morocho,* 2026 WL 2546223, at *3.

Furthermore, while the "entry fiction" doctrine:

> [A]llows the government to treat physical entrants as if still "on the threshold' if they are 'detained shortly after lawful entry" . . . no one could seriously contend that it applies to a noncitizen like [the petitioner] who has been living in the United States for [an extended period of time]. Under settled Supreme Court precedent, "aliens who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."

*Barbosa da Cunha*, 175 F.4th at 86 (emphasis in original).

As for §1226(a), it allows for the Attorney General to arrest and detain a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. §1226(a). Pending that decision, the Attorney General "(1) may continue to detain the arrested alien;" and (2) "may release the alien on . . . bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or . . . conditional parole." 8 U.S.C. §1226(a)(1)-(2). Where an alien is detained under §1226(a), they are still entitled to a bond hearing where they can argue why they should be released from detention pending a final order of removal. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021); *see also Borbot v. Warden Hudson County Correctional Facility*, 906 F.3d 274, 277-80 (3d Cir. 2018) (holding that individuals detained under §1226(a) are entitled to a bond hearing but not entitled to a second bond hearing after their first has been denied).

Here, Petitioner claims that he has been living in the United States for the past twenty-four years. (Doc. 9 at 1). He was taken into immigration custody on February 16, 2025. (Doc. 8-2 at 3). Therefore, he is not "seeking admission" as defined by §1225(b)(2)(A) and the caselaw. Accordingly, 8 U.S.C. §1226(a) applies.

**d. Petitioner's detention under 8 U.S.C. §1225(b)(2)(A) does not violate due process**

The Fifth Amendment protects against deprivation "of life, liberty, or property without due process of law." U.S. CONST. amend. V. This protection "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

To determine whether a habeas petitioner's detention under §1225(b)(2)(A) violates due process, courts weigh three factors: (1) "the private interest that will be affected by the official action[;]" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[;]" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Application of the factors reveals no violation of due process. First, the "most elemental of liberty interest[s]—the interest in being free from physical detention—" is implicated. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Second, Petitioner's erroneous detention under §1225(b)(2)(A) comes with a lack of procedural safeguards, including the opportunity for a bond hearing, which makes it extraordinarily difficult to challenge his detention. *Cunin v.*

*McShane*, 2025 WL 3542999, at *2 (M.D.Pa. Dec. 10, 2025) ("There is a certainty—not merely a risk—that the failure to grant [petitioner] a bond hearing would unlawfully deprive him of the opportunity to make the case for his release and incarcerate him indefinitely[.]").

However, third, the Government has an interest in detaining noncitizens "to ensure [their] appearance . . . at future immigration proceedings and to prevent danger to the community." *Quispe*, 819 F.Supp.3d at 373 (citing *Zadvydas*, 533 U.S. at 690). While the Court has no reason to doubt that Petitioner intends to appear at future immigration proceedings, it finds that the Government may have an interest in detaining Petitioner "to prevent danger to the community." Respondent notes that on February 15, 2025, Petitioner was arrested and charged with violating a protective order. (Doc. 8-2 at 4). However, this Court was provided with little substantive information regarding the facts of alleged violation. The circumstances surrounding the underlying protection order and Petitioner's arrest would be better adjudicated at a bond hearing before an immigration judge, who would have greater access to information that could resolve any factual disputes. Furthermore, Petitioner will have the opportunity to raise these same arguments at his bond hearing.

The Court notes that Petitioner's subsequent motion, (Doc. 11), requests that this Court conduct the bond hearing, or in the alternative, enforce a constitutionally adequate bond hearing. Though the Court acknowledges that this district has occasionally presided over bond hearings, the facts of this particular case do not call for such relief here. Accordingly, the Court maintains that an immigration judge is well-suited to determine whether Petitioner presents a danger to the community.

Upon weighing the *Mathews* factors in light of the information available to it at this time, the Court finds that Petitioner's continued detention under §1225(b)(2)(A) does not violate his procedural due process rights as the Government may have an interest in his continued detention to prevent danger to the community. Therefore, while Petitioner is entitled to a bond hearing under §1226(a), where he can argue for his release, he is not entitled to release by this Court at this time.

## IV. REMAINING MOTIONS

In addition to the underlying petition, Petitioner filed a "motion for temporary restraining order of preliminary injunction," which requests that the Court either grant his immediate release, hold the bond hearing itself, or order a "fully reasoned, individualized bond hearing[.]" (Doc. 10). The motion also asks the Court to restrain Respondent from transferring Petitioner

outside the district. *Id.* Similarly, Petitioner filed a "motion requesting [the] Court conduct the bond hearing or, in the alternative, motion to enforce a constitutionally adequate bond hearing." (Doc. 11). While the Court appreciates Petitioner's concern that a bond hearing held before an immigration judge may be inadequate or constitutionally insufficient, this Court declines to pre-judge such a circumstance. To the contrary, it assumes the immigration judge will comply with the law in an impartial and legally proper manner, therefore it declines to usurp the immigration court's authority over matters within its jurisdiction. Accordingly, the immigration court will hold Petitioner's bond hearing.

Because the Court is ordering that Petitioner receive an adequate bond hearing, much of the relief requested in the motions has become moot. However, to the extent that Petitioner's motion for temporary restraining order, (Doc. 10), requests that he remain detained in the Middle District of Pennsylvania, the Court will grant the motion. Moreover, the extent Petitioner asks the Court to ensure that he receives a constitutionally adequate bond hearing, (Docs. 10, 11), the Court finds his request to be premature.

## V. CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus under 28 U.S.C. §2241 will be **GRANTED** insofar as it requests a bond hearing. The Government will be required to provide Petitioner with a bond hearing under 8 U.S.C. §1226 within fourteen days of the Court's accompanying Order. The Government will be directed to file a declaration or affidavit pursuant to 28 U.S.C. §1746 confirming that Petitioner has been afforded an adequate bond hearing. Moreover, the motion for temporary restraining order will be **GRANTED** to the extent it requests that Petitioner not be transferred out of the Middle District of Pennsylvania, and otherwise **DENIED AS MOOT**; and the motion requesting the Court to conduct the bond hearing or otherwise enforce a constitutionally adequate bond hearing will be **DENIED WITHOUT PREJUDICE**. An appropriate Order shall be issued.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 9/16/26
26-2172-01